UNITED STATES of America, Plaintiff,

v.

**Michael D. WRIGHT, Defendant.**

**No. 91–NC–0067–S.**

United States District Court,
D. Utah,
Northern Division.

Jan. 4, 1993.

Glen R. Dawson, Daniel D. Price, Asst. U.S. Attys., Salt Lake City, UT, for plaintiff.

Brenda L. Flanders, Brenda L. Flanders & Associates, Salt Lake City, UT, for defendant.

## RULING

SAM, District Judge.

The court has before it Plaintiff United States of America's ("USA") Motion for Summary Judgment.

## FACTS

The court finds the facts to be as follows. On February 15, 1980, Stuart E. and Josephine Patterson ("Pattersons") executed a promissory note in favor of the USA in return for a rehabilitation loan issued under a program sponsored by the United States Department of Housing & Urban Development. The promissory note was secured by a trust deed on property located in Ogden, Utah. This trust deed was junior and subordinate to a pre-existing trust deed in favor of Dorothy Ann Montalbano ("Montalbano") on the same property.

On January 17, 1983, as part of a transaction to purchase the Ogden property, Defendant Michael Wright ("Wright") assumed the promissory note to the USA as well as the obligation to repay it from the Pattersons.

In March 1985, Wright deeded the Ogden property to Wildewood Intérnational, Inc. ("Wildewood") subject to the senior trust deed in favor of Montalbano and subject to the junior trust deed in favor of the USA. However, Wildewood never assumed Wright's indebtedness to the USA.[1] Slightly less than two years after Wright deeded the Ogden property to Wildewood, the State of Utah Department of Commerce involuntarily dissolved Wildewood.

In September 1985, default occurred on the promissory note in favor of the USA. Default had also occurred on the promissory note in favor of Montalbano. Ultimately, the Ogden property was foreclosed in favor of Montalbano, the senior lienor, due to a default in payment due her.

---

1. The All–Inclusive Trust Deed expressly refers to Wright's indebtedness to the USA as a "Senior Encumbrance" and states: "Nothing in this Trust Deed, the Note, or any deed in connection herewith shall be deemed to be an assumption by the Trustor [Wildewood] of the Senior Notes or Senior Encumbrances." Plaintiff's Exhibit G, Defendant's Exhibit 6.

The Ogden property was sold on July 29, 1988 to Montalbano, who was the high bidder at the trustee's sale. There were no excess proceeds from the sale to apply against any other encumbrances on the property. Consequently, the promissory note executed in favor of the USA became unsecured.

## DISCUSSION

Plaintiff USA has brought this action to recover money from Wright due both to a default in payment and to the unsecured nature of the promissory note. USA claims that the undisputed facts establish that Wright owes it this money unconditionally under the terms of the promissory note. Wright has asserted a number of defenses which will be discussed *infra.*

### 1. *The Certificate of Indebtedness Constitutes Admissible Evidence.*

■ Wright's first defense is that the USA has failed to provide admissible evidence to substantiate its prima facie case. Wright asserts that the only evidence of default, a Certificate of Indebtedness and a schedule of payment history, is inadmissible. The court disagrees. The Certificate of Indebtedness introduced in the Plaintiff's Motion for Summary Judgment is admissible as an exception to the hearsay rule under Federal Rule of Evidence 803(8) (1992). That evidentiary rule states in pertinent part: "The following are not excluded by the hearsay rule, even though the declarant is available as a witness: (8) ... Records, reports, statements, or data compilations, in any form, of public offices or agencies, ... unless the sources of information or other circumstances indicate a lack of trustworthiness." *Id.* The comments to this rule state the reason for this exception. "Justification for the exception is the assumption that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record." Fed.R.Evid. 803(8) cmt. to except. (8) (1992).

The Certificate of Indebtedness is a public record of a public office. The presumption is that this document was accurately prepared and Wright has failed to point out any circumstances indicating a lack of trustworthi-ness. Therefore, this court considers the Certificate of Indebtedness to constitute admissible evidence of default pursuant to Rule 803(8) of the Federal Rules of Evidence.

### 2. *Plaintiff USA's Claim Is Not Barred by the Doctrine of Laches.*

■ Mr. Wright next asserts that the USA's claim is barred by the doctrine of laches. The law is contrary to defendant's position. The Tenth Circuit, as well as a majority of other circuits, have held that the doctrine of laches may not be asserted as a defense against the USA when it is acting in its sovereign capacity to enforce a public right or to protect the public interest, unless Congress has clearly stated an intent to the contrary. *Cassidy Comm'n Co. v. United States,* 387 F.2d 875, 880 (10th Cir.1967). *See also United States v. Menatos,* 925 F.2d 333, 335 (9th Cir.1991) (government is not subject to the defense of laches when enforcing its rights); *Bostwick Irrigation District v. United States,* 900 F.2d 1285, 1291 (8th Cir.1990) (laches does not apply in action brought by the United States); *United States v. St. John's General Hospital,* 875 F.2d 1064, 1071 (3rd Cir.1989) (the United States is not subject to the defense of laches in enforcing its rights); *United States v. Popovich,* 820 F.2d 134, 136 (5th Cir.1987) (laches may not be asserted as a defense against the United States when it is acting in its sovereign capacity to enforce a public right or protect the public interest); *United States v. Hughes House Nursing Home, Inc.,* 710 F.2d 891, 895 (1st Cir.1983) (a virtually unbroken line of authority holds that a private defendant cannot assert laches against the government). The court is unaware of any express congressional intent allowing Wright to assert the defense of laches against the USA. Therefore, because the USA is acting in its sovereign capacity to protect a public interest, the court concludes that the doctrine of laches does not apply.

■ Further, even if the court, as urged by defendant, adopted the reasoning of *S.E.R., Jobs for Progress, Inc. v. United States,* 759 F.2d 1, 8 (Fed.Cir.1985) ("laches cannot ordinarily be invoked as a defense to legal claims where a statute of limitations is

normally available to preclude the recovery on state claims, unless the offended party has been unmistakably prejudiced by the delay in the assertion of the claim"), laches still would not bar the USA's claim. The court is of the opinion that the undisputed facts reflect that defendant has not been "unmistakably prejudiced."

The USA brought this action within the statute of limitations dictated by 28 U.S.C. 2415(a) (Supp.1992). At the time of the trustee's sale, there was over forty thousand dollars ($40,000) due on the promissory note in favor of Montalbano and the Ogden property was valued at approximately eight thousand dollars ($8,000). HUD was not required to give notice of default to the Noteholder, nor was the USA responsible to see that defendant received notice of default on the first lienholder's note. Consequently, even if the court adopted the reasoning of the Federal Circuit regarding the application of laches to the United States, the court would find that the USA's claim is not barred by laches.

### 3. Defendant's Frustration of Consideration Argument Is Inapplicable and Without Merit.

■ The court finds Wright's assertion, that his assumption of the Patterson's promissory note in favor of the USA is unenforceable due to a lack of consideration, meritless. The essence of defendant's argument is that, because he was not given notice of default of payment to HUD and because he did not receive notice of default of payment to the first lienholder, the purpose of the assumption agreement was frustrated which constitutes failure of consideration and recision of the contract is appropriate. However, as previously noted, HUD, by virtue of the note language, was not required to give notice of default to the noteholder. Neither was the USA responsible to see that defendant received notice of default on the first lienholder's note. Defendant could have assured himself of notice by complying with Utah Code Ann. § 57–1–26 which provides that any person can receive notice of default or sale under a trust deed by filing with the county recorder a duly acknowledged request. This defendant apparently failed to do.

The fact is that defendant received consideration for assuming the promissory notes by receiving a deed to the subject property. If, indeed, his purpose of contract was frustrated, blame cannot be laid at the feet of the USA. Rather, defendant must assume responsibility for not protecting his interest by failing to take steps which would have assured him of timely notice.

### 4. The One Action Rule Does Not Bar the Recovery Requested by the USA.

■ Mr. Wright next asserts that plaintiff's action is barred by Utah's "one action rule," set forth in Utah Code Ann. § 78–31–1 (1992). The court previously denied Wright's Second Motion to Dismiss Plaintiff's Complaint based on Utah's "one action rule." In that Order, the court brought to Wright's attention *City Consumer Services, Inc. v. Peters*, 815 P.2d 234 (Utah 1991). There the Utah Supreme Court stated:

[W]e hold today that the one-action rule does not apply to the facts of this case to deny the junior lienor its right to recover. The purpose of the one-action rule is to regulate the procedure of recovery of a secured creditor, not to deny the creditor's contract right to recover its loan. Therefore, when a junior becomes unsecured due to foreclosure by the senior lienor, the junior is not barred by the one-action rule from proceeding against the debtor on the note, since the creditor's status as to security is determined at the time the suit is brought.

*Id.* at 237. As in *Peters*, the USA, as junior lienor, became unsecured due to the foreclosure by the senior lienor, Montalbano. The factual distinctions between this case and *Consumer Services*, relied upon by defendant, are not material to the general proposition of law articulated by the Utah Supreme Court. The court finds, consistent with *Peters*, that USA's action in this matter is not barred by Utah's one-action rule.

### 5. *Wildewood Is Not an Indispensable Party.*

Lastly, Mr. Wright asserts that the action should be dismissed for failure of the USA to join Wildewood as an indispensable party under Fed.R.Civ.P., 19 (1992). The court disagrees. When Wright assumed the note, he agreed to pay the note in full. His transfer of the property to Wildewood did not alter his obligation. Wildewood did not assume Wright's debt to the USA. It is not necessary for Wildewood to be joined as a party to this action for the court to grant complete relief to the parties.

### CONCLUSION

The facts reflect that defendant assumed the rehabilitation loan and the obligation to repay it and then failed to repay it. The court finds no merit in the asserted defenses. Plaintiff USA has met its burden of proving that there is no genuine issue regarding any material fact. Furthermore, defendant Wright has failed to identify specific facts showing that there is a genuine issue for trial. Thus, plaintiff is entitled to judgment as a matter of law. Accordingly, plaintiff USA's Motion for Summary Judgment is hereby GRANTED.